UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

　　　　　Plaintiff,

　v.

GLEN A. STOLL; STOLL FAMILY TRUST;
DIRECTOR OF THE FAMILY DEFENSE
LEAGUE a/k/a FAMILY DEFENSE LEAGUE
a/k/a FAMILY DEFENSE NETWORK
a/k/a FAMILY DEFENSE FUND; and
SNOHOMISH COUNTY,

　　　　　Defendants.

C22-1130 TSZ

ORDER

THIS MATTER comes before the Court on a motion for summary judgment and default judgment, docket no. 80, brought by plaintiff United States of America (the "Government"), and a motion to set aside default, docket no. 83, brought by defendant Stoll Family Trust.  Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following Order.

**Background**

The Internal Revenue Service ("IRS") has computed defendant Glen A. Stoll's federal income tax liabilities for the years 2001–2008 to be $1,265,461.89 as of

ORDER - 1

1   December 13, 2024, including interest, penalties, and statutory accruals.  <u>See</u> Hall Decl.

2   at ¶¶ 10–11, 13, & 23 (docket no. 80-1).  In this action, the Government seeks to reduce

3   its federal tax assessments to judgment and to foreclose its tax liens on real property

4   located at 7311 Grove Street in Marysville, Washington[1] (the "Subject Property" or

5   "Marysville House"), which the Government asserts is owned by Stoll's nominee or alter

6   ego.  <u>See</u> Compl. at ¶¶ 39, 41–54, & 58–60 (docket no. 1).  At this stage of the litigation,

7   the crux of the parties' dispute is whether Stoll has the requisite ownership of or interest

8   in the Marysville House for the Government's tax liens to have attached to the property

9   pursuant to 26 U.S.C. § 6321.[2]

10          In January 1992, Stoll's parents, Richard H. Stoll and Mary Stoll, created the

11  Richard H. Stoll and Mary Stoll Family Trust (the "Stoll Family Trust").  <u>See</u> Ex. 106

12  (docket no. 80-46 at 2).  Stoll's parents were the trustors, original trustees, and

13  beneficiaries of the Stoll Family Trust.  <u>Id.</u> (docket no. 80-46 at 2 & 4).  In May 2002, the

14  Stoll Family Trust acquired the Marysville House.  Ex. 103 (docket no. 80-43); <u>see also</u>

15  Ex. 105 (docket no. 80-45).  To secure a loan in the amount of $185,250, the Stoll Family

16  Trust executed a Deed of Trust concerning the Marysville House, identifying Credit

17  Union of the Pacific (which later became Sound Community Bank) as the lender and

---

[1] The legal description for the Subject Property is as follows:  "LOT(S) 7, MUNSON CREEK ESTATES DIVISION III, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 49 OF PLATS, PAGE(S) 180 AND 181, RECORDS OF SNOHOMISH COUNTY, WASHINGTON."  Statutory Warranty Deed, Ex. 103 (docket no. 80-43).

[2] The statute establishing tax liens reads as follows:  "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."  26 U.S.C. § 6321.

ORDER - 2

Stewart Title Company of Snohomish County, Inc. as the trustee.  See Ex. 104 (docket no. 80-44).

In September 2005, the Stoll Family Trust's trust agreement was restated to provide as follows:

- Upon the death of both Richard and Mary Stoll, their daughter Janet M. Spangler would serve as trustee; their son Lee R. Stoll was named as first successor trustee and Glen Stoll was named as second successor trustee;

- Upon the death of both Richard and Mary Stoll, the trustee would distribute in equal shares to their surviving offspring all assets remaining after the payment of certain expenses and taxes, provided that any interest in the Marysville House was to be included in the portion allocated to Glen Stoll;

- The Marysville house was to be deemed "worth the amount necessary to discharge any remaining balance on the original purchase price mortgage"; and

- If Glen Stoll disclaimed "part or all of the share allocated for him," then the disclaimed portion was to be distributed to the Director of the Family Defense League, which is also a defendant in this matter.

See Restatement of Stoll Family Trust at Arts. II & VII, Ex. 106 (docket no. 80-46 at 4 & 11–12).  Richard Stoll died in February 2006, and Mary Stoll died in October 2011, at which time Janet Spangler became the trustee of the Stoll Family Trust.  See Spangler Rule 30(b)(6) Dep. at 53:21–22 (docket no. 80-22); see also Compl. at ¶¶ 24–25 (docket no. 1).

By letter to Spangler dated September 28, 2012, Glen Stoll disclaimed all of the assets allocated to him under the restated trust agreement. Ex. 179 (docket no. 80-68).  In the letter, Stoll indicated his understanding that his "inheritance shall be used to pay off the mortgage on the Marysville house [and] the Marysville house shall then be deeded to the Director of the Family Defense League." Id.  In November 2012, the Stoll Family Trust paid the balance due to Sound Community Bank with respect to the Marysville

ORDER - 3

house, Ex. 108 (docket no. 80-48 at 10); <u>see also</u> Spangler Rule 30(b)(6) Dep. at 108:16–22 (docket no. 80-22), and a full reconveyance of the related Deed of Trust was recorded in December 2012, Ex. 107 (docket no. 80-47).  No evidence has been presented that a statutory warranty, quit claim, or other form of deed or a real estate excise tax affidavit was ever recorded in connection with the alleged transaction between the Stoll Family Trust and the Director of the Family Defense League.[3]

In August 2022, the Government commenced this action against Stoll, the Stoll Family Trust, the Director of the Family Defense League (a.k.a. Family Defense League, a.k.a. Family Defense Network, a.k.a. Family Defense Fund), and Snohomish County.  <u>See</u> Compl. (docket no. 1).  In October 2022, the Government entered into, and the Court later approved, a stipulation to treat Snohomish County's property tax liens as senior to the Government's federal tax liens.  <u>See</u> Stipulation (docket no. 9); <u>see also</u> Order (docket no. 11).  By Order entered April 25, 2023, the Clerk of the Court entered default against the Stoll Family Trust and the Director of the Family Defense League, neither of which had timely pleaded or otherwise defended in this action.  <u>See</u> Order (docket no. 35).  The Government now seeks default judgment against both the Director of the Family Defense League and the Stoll Family Trust, as well as summary judgment against Stoll.

---

[3] During her deposition, Spangler testified that she "went to the County and did what was necessary to transfer the Subject Property into the Director of the Family Defense League." Spangler Rule 30(b)(6) Dep. at 160:8–11 (docket no. 80-22).  Spangler could not, however, describe any steps that she might have taken to convey the Marysville House to the Director of the Family Defense League.  <u>See id.</u> at 160:12–161:11 & 165:3–21.

ORDER - 4

1  The Stoll Family Trust asks that the entry of default against it be vacated. <u>See</u>

2  Def.'s Mot. (docket no. 83). Stoll has requested that the Government's motion for

3  summary judgment be continued for two months. <u>See</u> Email (Jan. 13, 2025), Ex. to

4  Minute Order (docket no. 88-1). Stoll also indicates that he "joins" the Stoll Family

5  Trust's attorney in asking for a two-month extension, <u>see id.</u>, but the Stoll Family Trust

6  has not sought any extra time to respond to the Government's motion for summary

7  judgment. Rather, the Stoll Family Trust has filed a brief setting forth the reasons why it

8  believes the Government's motion should be denied. <u>See</u> Resp. (docket no. 84). In

9  addition, Stoll has attempted to present arguments on behalf of the Director of the Family

10 Defense League. Stoll, however, is not an attorney, and he is not authorized to represent

11 the Director of the Family Defense League before this Court. Stoll's "joinder" in a non-

12 existent motion and his contentions about the default status of the Director of the Family

13 Defense League are without merit.

14 **<u>Discussion</u>**

15 **A.    <u>Default Judgment Against Director of the Family Defense League</u>**

16 The Director of the Family Defense League is a corporation sole[4] of which Stoll is

17 the governor. <u>See</u> Compl. at ¶ 9 (docket no. 1). No attorney has appeared on its behalf,

---

[4] A corporation sole is a business form "authorized under certain state laws to enable *bona fide* religious leaders to hold property and conduct business for the benefit of the religious entity." Rev. Rul. 2004-27, 2004-1 C.B. 625. A corporation sole "may own property and enter into contracts as a natural person, but only for the purposes of the religious entity and not for the individual office holder's personal benefit." <u>Id.</u> By operation of law, title to property that vests in the office holder as a corporation sole "passes not to the office holder's heirs, but to the successors to the office." <u>Id.</u> The corporate sole form is "designed to ensure continuity of ownership of property dedicated to the benefit of a legitimate religious organization." <u>Id.</u>

ORDER - 5

1  and it has not filed a responsive pleading or motion.  Default was properly entered, and as
2  a result, as to the Director of the Family Defense League, the factual allegations of the
3  Complaint are taken as true.  <u>See</u> Fed. R. Civ. P. 8(b)(6) ("An allegation--other than one
4  relating to the amount of damages--is admitted if a responsive pleading is required and
5  the allegation is not denied.").  The Complaint alleges that Stoll has control over the
6  Director of the Family Defense League, being the only authorized signer on its bank
7  account, from which he pays the utility bills and property taxes for the Marysville House.
8  <u>See</u> Compl. at ¶¶ 47–48 (docket no. 1).  According to the Government, Stoll resides at
9  the Marysville House,[5] pays no rent for doing so, makes all decisions concerning the
10 property, and is its the true owner.  <u>Id.</u> at ¶¶ 45–46 & 54.  The Government is entitled to
11 default judgment that, to the extent the Director of the Family Defense League holds any
12 interest in the Subject Property, it does so as Stoll's "nominee" or "alter ego."  <u>See</u> <u>United</u>
13 <u>States v. Smith</u>, No. C11-5101 RJB, 2012 WL 1977964, at *5–6 (W.D. Wash. June 1,
14 2012) (observing that federal courts look to the law of the forum state in determining
15 whether an entity is a nominee or alter ego of a taxpayer, and enumerating six factors for
16 deeming an entity a nominee, including the absence of or insufficient consideration for
17 the property at issue, the failure to record an alleged conveyance to the nominee, and the
18 taxpayer's retention of possession and enjoyment of the benefits of the property);
19 <u>see also</u> <u>United States v. Black</u>, 482 F. App'x 241, 244 (9th Cir. 2012) ("Washington

---

[5] The Court notes that mail sent to Stoll has been returned as undeliverable, but the envelopes at issue appear to have been misaddressed to 7311 Grove St **SE**, rather than 7311 Grove St, <u>see</u> docket nos. 64 & 65, and the Court does not draw from this information any inference contrary to the Government's allegation that Stoll lives in the Marysville House.

ORDER - 6

1 courts recognize the 'alter ego' doctrine and have held that piercing the corporate veil
2 is appropriate if an individual 'so dominates and controls a corporation that such
3 corporation is [his or her] alter ego' and 'the corporate form has been intentionally used
4 to violate or evade a duty.'" (alteration in original)).

5     Moreover, given that (i) the Director of the Family Defense League did not itself
6 purchase the Marysville House, (ii) the funds used to repay the loan for which the Subject
7 Property served as collateral were from Stoll's share of the Stoll Family Trust assets to be
8 distributed upon his parents' deaths, and (iii) no deed granting the Director of the Family
9 Defense League title to the Subject Property was ever recorded, the Court concludes that
10 the Director of the Family Defense League has no legitimate claim of ownership or
11 interest in the Marysville House.

12 **B.** **Vacating Entry of Default Against Stoll Family Trust**

13     Although the Court agrees with the Government that the Stoll Family Trust's
14 culpable conduct in failing to respond to the Government's Complaint and its lack of a
15 meritorious defense constitute reasons for denying its motion to set aside the entry of
16 default, see Gov't Resp. at 5–6 (docket no. 89) (citing Franchise Holding II, LLC v.
17 Huntington Restaurants Grp., Inc., 375 F.3d 922 (9th Cir. 2004)), the Court is persuaded
18 that the best course of action is to (i) vacate the entry of default, (ii) accept the Stoll
19 Family Trust's Answer, docket no. 83-2, which was submitted as an attachment to its
20 pending motion, and (iii) decide the Government's motion for summary judgment, on the
21 merits, as to both Stoll and the Stoll Family Trust. The Stoll Family Trust has filed a
22 substantive response, docket no. 84, to the Government's motion for summary judgment,
23

ORDER - 7

and it has not invoked any of the provisions of Federal Rule of Civil Procedure 56(d) to seek additional time to secure more evidence or provide supplemental briefing. Thus, with respect to the Stoll Family Trust, which is represented by counsel, the Government's motion for summary judgment is ready for consideration.

**C.  Summary Judgment**

    **1.  Applicable Standards**

The Court shall grant summary judgment if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present "affirmative evidence," which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. Id. at 255, 257. When the record, taken as a whole, could not, however, lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

    **2.  Stoll's Request for Two-Month Continuance**

By email dated January 13, 2025, the day when his response to the Government's motion for summary judgment was due, see docket entry dated December 20, 2024, Stoll stated that, on January 9, 2025, he received an envelope stamped "FOUND LOOSE IN THE MAIL" that contained documents "pertaining to this case." See Email (Jan. 13,

ORDER - 8

1  2025), Ex. to Minute Order (docket no. 88-1).  He further indicated that a copy of the

2  envelope was attached, <u>id.</u>, but his email included no attachment.  He described the

3  documents in the envelope as "some court pleading papers, transcripts of proceedings,

4  and a few exhibits," and he acknowledged receiving "a document from the court clerk

5  informing [him] that . . . there is a deadline of today, January 13, 2025, for [him] to

6  respond."  <u>Id.</u>  To the extent Stoll is suggesting that the notice sent by the Clerk was in

7  the same envelope as the other materials "pertaining to this case," Stoll's assertion lacks

8  any credibility.  When, on December 20, 2024, the Court renoted the Government's

9  motion for summary judgment and set the response due date of January 13, 2025, the

10 Clerk immediately mailed a notice to Stoll.  No reason exists for such notice to have been

11 commingled with other documents earlier served by the Government or to have been

12 delayed in reaching him.  The Clerk also emailed the notice to Stoll on January 2, 2025.

13        The Government's motion for summary judgment was filed on December 13,

14 2024, a month before the response due date set by the Court.  According to the

15 Government, on the same day its motion and related papers were filed, two copies of

16 them were sent to Stoll via first-class mail.  <u>See</u> Tran Decl. at ¶ 2 (docket no. 90-1).  In

17 addition, on December 13, 2024, the Government's motion was sent electronically to

18 Stoll at two different email addresses, and the voluminous supporting documents were

19 provided to Stoll via a link to the Justice Enterprise File Sharing ("JEFS") system.

20 <u>See id.</u> at ¶¶ 3–4.  One of the email addresses (glenstoll50@gmail.com) to which the

21 Government served its motion and the link to the JEFS system is the same email address

22 that Stoll used to request the two-month continuance at issue.  <u>Compare id.</u> at ¶¶ 3–4 &

23

ORDER - 9

1 | Ex. 1 (docket nos. 90-1 & 90-2) <u>with</u> Email (Jan. 13, 2025), Ex. to Minute Order (docket
2 | no. 88-1). Thus, the record supports the conclusion that, as of December 13, 2024, Stoll
3 | had received a copy of the Government's motion for summary judgment. He also knew,
4 | as of January 2, 2025, at the latest, that the Court had sua sponte given him a one-week
5 | extension of time to file his response. The Court is satisfied that Stoll had sufficient
6 | notice of and ample time to prepare a response to the Government's motion for summary
7 | judgment.

8 | Throughout the course of this litigation, Stoll has repeatedly sought extensions and
9 | failed to comply with deadlines. By Minute Order entered February 16, 2023, he was
10 | granted an additional ten weeks and two days to arrange for an attorney to appear on his
11 | behalf. <u>See</u> Minute Order at ¶ 3 (docket no. 28). To date, however, Stoll continues to
12 | proceed without the assistance of counsel. By Minute Order entered May 24, 2024, Stoll
13 | was directed to produce initial disclosures and complete responses to the Government's
14 | discovery requests because he had failed to do so in a timely fashion. <u>See</u> Minute Order
15 | at ¶ 2 (docket no. 56). By Minute Order entered August 23, 2024, Stoll was again
16 | directed to provide discovery responses to the Government. <u>See</u> Minute Order at ¶ 2(b)
17 | (docket no. 63). During a subsequent hearing conducted via the Zoom platform, the
18 | Court was advised that Stoll had still not responded to the Government's discovery
19 | requests. <u>See</u> Minutes (Sep. 30, 2024) (docket no. 70). Another deadline was set for
20 | Stoll to arrange for a lawyer to represent him, <u>see id.</u>, but the Court eventually concluded
21 | that the person who later tried to appear on Stoll's behalf was not admitted to practice in
22 | this District, was not a member of the Washington State Bar Association, and was likely
23 |

ORDER - 10

not an attorney or a real person, <u>see</u> Minute Order at ¶ 1 (docket no. 74).  Given Stoll's recalcitrance in this matter, as well as his apparent attempt to deceive the Court,[6] the Court concludes that no purpose would be served by granting a two-month continuance.  To avoid unnecessary and pointless delay, Stoll's extension request is DENIED.

### 3. **Stoll Family Trust's Defenses**

In its Answer to the Government's Complaint, the Stoll Family Trust asserts three affirmative defenses, namely that (i) the Court lacks subject matter jurisdiction concerning the determination or changing of property ownership in the State of Washington; (ii) the Complaint fails to state a claim because the Stoll Family Trust is not Stoll's nominee or alter ego; and (iii) pursuant to the Statute of Frauds, transactions involving the conveyance of real property must be in writing.  <u>See</u> Ans. at § B (docket

---

[6] Stoll has represented to the Court that he has "never run an 'abusive tax promotor business' of any kind, at any time, nor has there ever been any evidence offered that would show [he has] done anything to justify any injunction or criminal judgment."  Email (Jan. 13, 2025), Ex. to Minute Order (docket no. 88-1).  On January 15, 2021, however, Stoll pleaded guilty to conspiracy to defraud the United States and to evasion of income tax.  <u>See</u> Ex. L (docket no. 80-13) (Plea Agr., <u>United States v. Stoll</u>, No. 3:19-cr-112, docket no. 57 (D. Or. Jan. 15, 2021)).  In his plea agreement, Stoll admitted that he offered tax evasion services via his company "Remedies at Law," including the creation of nominees that would hold legal title to real and personal property, conceal a taxpayer's income and assets from the Internal Revenue Service, and receive compensation for the taxpayer and pay the taxpayer's personal expenses.  <u>Id.</u>  As a result, Stoll was sentenced to three years of probation, and he was ordered to pay (jointly and severally with the conspiring taxpayers) restitution to the Government in the amount of $1,419,932.00.  <u>See</u> Am. J., <u>United States v. Stoll</u>, No. 3:19-cr-112, docket no. 64 (D. Or. May 11, 2021).  In an earlier case, Stoll was permanently enjoined from <u>inter alia</u> advising or assisting others to evade the payment of federal taxes and/or promoting the "false and frivolous position" that taxes may be reduced or eliminated by employing corporations sole or ministerial trusts to shelter income.  <u>United States v. Stoll</u>, No. C05-262 RSM, 2005 WL 1763617, at *9 (W.D. Wash. June 27, 2005).  Over the past twenty or more years, Stoll has engaged in a pattern of fraudulent and obstructive behavior, and his own admissions in accepting a plea offer completely contradict his recent denial of wrongdoing.

ORDER - 11

no. 83-2). The Court addresses the first issue separately and the latter two arguments jointly.

### a. Jurisdiction

In its response to the Government's motion for summary judgment, the Stoll Family Trust contends that, because federal courts turn to state law to determine whether an entity holds property as a nominee or alter ego of a taxpayer, and because the superior courts in the State of Washington have original jurisdiction in cases involving the title to or possession of real property, this Court has no authority to decide such matters. See Resp. at 5–6 (docket no. 84). The Stoll Family Trust cites no authority for such proposition, and its analysis is incorrect as a matter of law.

Four different statutes confer on the Court the requisite jurisdiction to hear this case. The Court has original jurisdiction as to civil actions arising under the Internal Revenue Code. See 28 U.S.C. § 1340. The Court also has original jurisdiction of all civil actions commenced by the Government. See 28 U.S.C. § 1345. In addition, the Court has authority to "render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws," including jurisdiction to quiet title to real property if the Government claims that its title to such property was derived from the enforcement of a tax lien. See 26 U.S.C. §§ 7402(a)&(e). Finally, the Court is statutorily required to adjudicate claims by the Government to enforce liens arising from delinquent tax liabilities, and it has the power to decree a sale of property subject to such liens and to specify how the proceeds of such sale will be distributed. See 26 U.S.C. §§ 7403(a)&(c). Although the Court must apply state law to determine the extent to which a taxpayer has

property rights, the enforcement of liens against the taxpayer's property is governed by federal law.  See Aquilino v. United States, 363 U.S. 509, 512–14 (1960).  The Stoll Family Trust's premise that this Court is incapable of performing the required analysis under state law or is somehow stripped of jurisdiction by the authority bestowed on state courts runs contrary to the basic principles of federalism, as well as the clear language of the Supremacy Clause.  See U.S. CONST. art. VI, cl. 2.

### b. Constructive Trust

The other two affirmative defenses asserted by the Stoll Family Trust (and briefed in its response to the Government's motion for summary judgment) concern the title to the Subject Property.  The Stoll Family Trust contends that it is the "true owner" of the Marysville House because (i) no written document conveyed the property away from the Stoll Family Trust, as required by the Statute of Frauds, and (ii) it is not Stoll's nominee or alter ego.  See Ans. at ¶¶ B(2)&(3) (docket no. 83-2).  The Court agrees that the Subject Property was not transferred, in the manner specified in RCW 64.04.010 (stating that a "conveyance of real estate . . . shall be by deed"), to either Stoll or the Director of the Family Defense League, as contemplated in the restated trust agreement.  The Subject Property nevertheless belongs to Stoll pursuant to Washington jurisprudence concerning constructive trusts.

As explained by the Washington Supreme Court, "[c]onstructive trusts arising in equity are imposed when there is clear, cogent, and convincing evidence of the basis for impressing the trust." Baker v. Leonard, 120 Wn.2d 538, 547, 843 P.2d 1050 (1993).  In a variety of circumstances, Washington courts will "intervene to compel the holder of

1  legal title to convey the beneficial interest to the one who justly deserves it," including

2  when fraud, misrepresentation, concealment, bad faith behavior, undue influence, duress,

3  or other overreaching has occurred.  See id.  Constructive trusts may also be imposed in

4  the absence of fraud or wrongdoing if (i) the evidence establishes that the entity holding

5  title to the property has an equitable duty to convey it to another, or (ii) the legal title

6  holder was not a decedent's intended beneficiary.  See id. at 547–48; see also Mehelich v.

7  Mehelich, 7 Wn. App. 545, 551–52, 500 P.2d 779 (1972) ("A constructive trust may arise

8  even though acquisition of the property was not wrongful.  It arises where the retention of

9  the property would result in the unjust enrichment of the person retaining it."); Proctor v.

10  Forsythe, 4 Wn. App. 238, 242, 480 P.2d 511 (1971) ("A constructive trust arises where

11  a person holding title to property is subject to an equitable duty to convey it to another on

12  the ground that he would be unjustly enriched if he were permitted to retain it.").

13        In this matter, the Stoll Family Trust would be unjustly enriched if deemed the

14  "true owner" of the Subject Property.  The restated trust agreement required that, upon

15  Stoll's parents' deaths and Stoll's disclaimer of interest in the Marysville House,[7] the

---

[7] Stoll's disclaimer, which occurred in September 2012, see Ex. 179 (docket no. 80-68), post-dated the tax years for which the Government has filed liens against the Subject Property.  It was also executed after Stoll had been summoned by the IRS to appear in June 2005 and produce his financial records, after the IRS issued a Notice of Deficiency in March 2012, accompanied by Form 4549-A (Income Tax Discrepancy Adjustments), and after the taxes at issue were first assessed in August 2012.  See Hall Decl. at ¶¶ 9 & 12–13 (docket no. 80-1).  Thus, Stoll's disclaimer did not operate to defeat the Government's tax liens.  See Drye v. United States, 528 U.S. 49 (1999).  In Drye, the Supreme Court explained that an heir exercises dominion over property to be inherited by determining who will receive the property, i.e., the heir (if the property is not disclaimed) or "a known other" (if it is disclaimed).  Id. at 61.  This power to channel an estate's assets leads to the conclusion that an heir holds "property" or a "right to property" subject to the Government's tax liens.  Id.

trustee (Spangler) distribute the property to the Director of the Family Defense League. Spangler's failure to effectuate the transfer constituted a breach of her fiduciary duty as trustee of the Stoll Family Trust. If Spangler had fulfilled her obligations under the restated trust agreement, the Subject Property would not now belong to the Stoll Family Trust. Instead, the Subject Property would have been conveyed to the Director of the Family Defense League, which is merely Stoll's nominee or alter ego, and thus, as a matter of law and equity, the Stoll Family Trust is deemed to hold the Marysville House in constructive trust for Stoll. See <u>Baker</u>, 120 Wn.2d at 547–48. The Court therefore concludes that the Government's tax liens on the Subject Property are valid and enforceable.

In light of this ruling, the Court need not address the issue of whether the Stoll Family Trust is Stoll's nominee or alter ego. The Court, however, concludes that the Stoll Family Trust is a sham. Virtually all of the assets of the Stoll Family Trust (other than, inadvertently, the Marysville House[8]) had been distributed as of June 2013; the only remaining funds ($18,000) were retained to cover final bills, which have presumably since been paid, and the only tangible items still needing to be divided at that time were family photographs. <u>See</u> Ex. 179 (docket no. 80-68 at 4). Thus, except for the Subject Property, no trust res exists, and the Stoll Family Trust serves no purpose other than to try to shield Stoll from the Government's efforts to collect long-delinquent taxes. Although

---

[8] The funds ($158,726.90) used to pay off the mortgage on the Subject Property represented more than fifty-one percent (51%) of what Stoll would have inherited after his parents' deaths had he not disclaimed his interest in the Marysville House and other assets of the Stoll Family Trust. <u>See</u> Ex. 179 (docket no. 80-68 at 5).

ORDER - 15

it might have begun as a legitimate estate-planning vehicle, the Stoll Family Trust is now a sham, and the Government may levy upon its sole remaining asset, the Subject Property.  See 911 Mgmt., LLC v. United States, 657 F. Supp. 2d 1186, 1191 (D. Or. 2009); Colby B. Found. v. United States, No. Civ. 96-3073, 1997 WL 1046002, at *16 (D. Or. Oct. 22, 1997) (observing that "the United States may levy upon property held by a third party . . . when a third party trust or entity is the alter ego or nominee of a tax payer who is indebted to the United States for past taxes and penalties, when a trust or entity is a 'sham,' or when the third party's interest in the property derives from a fraudulent transfer by the tax payer whose liabilities are at issue" (citations omitted)).

    **4.**    **Tax Assessments and Lien Foreclosure**

In his email in response to the Government's motion for summary judgment, Stoll did not offer any cognizable basis for doubting the accuracy of the Government's tax liability calculations.  Stoll's bald assertion, unsupported by any evidence or analysis, that he does not owe any income taxes, see Ex. to Minute Order (docket no. 88-1), does not create any genuine dispute of material fact.  Moreover, as indicated in the Minute Order entered August 23, 2024, docket no. 63, by failing to timely respond to the Government's First Requests for Admissions, Stoll is deemed to have admitted all matters set forth therein.  See Fed. R. Civ. P. 36(a)(3).  As a result, Stoll has admitted the annual gross incomes for the years 2001–2008 on which the Government based its computations, as well as the correctness of the Government's tax assessments.  See Reqs. for Admis. 7–8, 10–25, & 28 (docket no. 51-2 at 34–38).  The Government is entitled to judgment as a matter of law concerning the amount of Stoll's tax liability, including

interest, penalties, and statutory accruals, and its right to foreclose on its tax liens against the Subject Property.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)  The Stoll Family Trust's motion, docket no. 83, to set aside default is GRANTED.  The Order entered April 25, 2023, docket no. 35, is VACATED as to the Stoll Family Trust, but remains in full force and effect as to the Director of the Family Defense League (a.k.a. Family Defense League).  The Stoll Family Trust is deemed to have responded to the Government's Complaint.  *See* Ans. (docket no. 83-2).

(2)  Stoll's request, docket no. 88-1, for a two-month continuance is DENIED.

(3)  The Government's motion, docket no. 80, for default judgment and summary judgment is GRANTED as follows.  Default judgment shall be entered in favor of the Government and against the Director of the Family Defense League (a.k.a. Family Defense League, a.k.a. Family Defense Network, a.k.a. Family Defense Fund), as follows:  the Director of the Family Defense League is Stoll's nominee or alter ego, and it has no legitimate claim of ownership or interest in the Subject Property.  Judgment consistent with this Order shall be entered in favor of the Government and against the Stoll Family Trust and Glen A. Stoll, as follows:  (i) the Stoll Family Trust is a sham and holds the Subject Property in constructive trust for Stoll; (ii) the Government's tax liens on the Subject Property are valid and enforceable; (iii) Stoll is liable to the Government for $1,265,461.89 in delinquent taxes, interest, penalties, and statutory accruals, together with interest, penalties, and additional statutory accruals that have accumulated since

December 13, 2024; and (iv) the Government may foreclose on its tax liens against the Subject Property.

(4) The Government is DIRECTED to file and serve, within twenty-one (21) days of the date of this Order, a proposed form of judgment and any proposed decree of sale of the Marysville House and/or proposed order to appoint a receiver to enforce the Government's tax liens. See 26 U.S.C. §§ 7403(c)&(d). Any objection to the forms of judgment and/or proposed orders shall be filed within fourteen (14) days thereafter. No response to any objection shall be filed unless requested by the Court.

(5) The Clerk is directed to send a copy of this Order to all counsel of record, as well as to Glen Stoll via both first-class mail and email.

IT IS SO ORDERED.

Dated this 5th day of March, 2025.

Thomas S. Zilly
United States District Judge

ORDER - 18