UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

        Plaintiff,

v.

GLEN A. STOLL; STOLL FAMILY TRUST; DIRECTOR OF THE FAMILY DEFENSE LEAGUE a/k/a FAMILY DEFENSE LEAGUE a/k/a FAMILY DEFENSE NETWORK a/k/a FAMILY DEFENSE FUND; and SNOHOMISH COUNTY,

        Defendants.

C22-1130 TSZ

ORDER

THIS MATTER comes before the Court on defendant Glen A. Stoll's motion for reconsideration, docket no. 96, as well as on motions brought by plaintiff United States of America (the "Government") for entry of judgment, docket no. 93, and for an order of foreclosure, judicial sale, and appointment of a receiver, docket no. 94. Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following Order.

**Background**

By Order entered March 5, 2025, docket no. 92, the Court granted the Government's motion for default judgment as to defendant Director of the Family Defense League (a.k.a. Family Defense League, a.k.a. Family Defense Network, a.k.a. Family Defense Fund), and granted summary judgment in favor of the Government and

ORDER - 1

against defendants Stoll Family Trust and Glen A. Stoll. The Government was directed to file and serve a proposed form of judgment, any proposed order to appoint a receiver, and any proposed decree of sale of the real property located at 7311 Grove Street in Marysville, Washington (the "Subject Property" or "Marysville House").[1] On March 26, 2025, the Government submitted a proposed form of judgment, as well as a proposed order of foreclosure, judicial sale, and appointment of a receiver. Stoll has not objected to either the proposed form of judgment or the Government's proposed order of foreclosure, judicial sale, and appointment of a receiver; instead, he has moved for reconsideration of the Court's prior Order. Stoll Family Trust has objected to both the form of judgment and the proposed order. See Def.'s Resp. (docket no. 95).

**Discussion**

**A.    Motion for Reconsideration**

"Motions for reconsideration are disfavored." Local Civil Rule 7(h)(1). Such motions are ordinarily denied absent a showing of either (i) "new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence," or (ii) "manifest error in the prior ruling." Id. In his motion, Stoll contends that he has "recently discovered" a witness who mistakenly received the Notice of Deficiency sent to him by the Internal Revenue Service. Stoll, however, has failed to identify this witness or explain why he could not have found this witness earlier through

---

[1] The legal description for the Subject Property is as follows: "LOT(S) 7, MUNSON CREEK ESTATES DIVISION III, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 49 OF PLATS, PAGE(S) 180 AND 181, RECORDS OF SNOHOMISH COUNTY, WASHINGTON." Statutory Warranty Deed, Ex. 103 (docket no. 80-43).

ORDER - 2

the exercise of reasonable diligence.  Stoll also relies on Washington's statutory provisions governing unincorporated nonprofit associations and corporations sole, but he fails to indicate why he did not bring them to the Court's attention when his response to the Government's motion for summary judgment was due or how such laws relate to or demonstrate any error in the Court's previous rulings.

In his motion for reconsideration, Stoll makes contradictory arguments, on the one hand denying that he received taxable income during the years 2001–2008, and on the other hand admitting that he has been receiving "basic life sustenance" from the Director of the Family Defense League, *i.e.*, taxable income.  Def. Stoll's Mot. for Recons. (docket no. 96 at 2 & 6).  Stoll indicates that he can "easily" prove his lack of income, *id.* (docket no. 96 at 2), but he has not, to date, proffered any affirmative evidence, which he was required to do to survive the Government's motion for summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255–57 (1986).  Moreover, Stoll offers no reason why his concessions, which arose from his failure to timely respond to the Government's discovery requests, *see* Order at 16 (docket no. 92) (citing Fed. R. Civ. P. 36(a)(3)), concerning his annual gross incomes for the years 2001–2008 and his related tax liability, including interest, penalties, and statutory accruals, are not sufficient to support summary judgment in favor of the Government.

Without any support, Stoll asserts that the Court has, in the past,[2] allowed him to represent other litigants, thereby suggesting that the Court has ruled inconsistently by not

---

[2] Stoll also alleges, without any evidence or explanation, that the undersigned judge "personally owe[s him] a substantial amount of money."  *See* Def. Stoll's Mot. for Recons. (docket no. 96 at

ORDER - 3

permitting him to appear in this case on behalf of the Director of the Family Defense League. Regardless of what might or might not have occurred in other matters or before different judges, the rules of this District and the doctrines against the unauthorized practice of law prohibit Stoll from acting for the Director of the Family Defense League, which is allegedly a corporation sole. See Local Civil Rule 83.2(b)(4).

Stoll devotes much of his motion for reconsideration to the subject of whether the Director of the Family Defense League is his "nominee" or "alter ego," but the Court's decision that the Director of the Family Defense League has no legitimate claim of ownership or interest in the Marysville House was based on the facts that the Director of the Family Defense League did not itself purchase the Subject Property and no deed granting the Director of the Family Defense League title to the Subject Property was ever recorded. See Order at 7 (docket no. 92). Thus, Stoll's assertions concerning his relationship with the Director of the Family Defense League do not, in any way, undermine the appropriateness and validity of the Court's previous Order, and Stoll's motion for reconsideration is DENIED.

**B.      Form of Judgment**

The form of judgment proposed by the Government is substantially consistent with the Court's Order dated March 5, 2025. Stoll Family Trust, however, objects to two provisions in the proposed judgment: (i) use of the phrase "sham entity" to describe Stoll

---

4). Such statement, which the undersigned judge knows to be false, constitutes yet another attempt to deceive the Court. See Order at 11 n.6 (docket no. 92).

ORDER - 4

Family Trust; and (ii) language indicating that the "tax liens on the Subject Property are valid and enforceable." Stoll Family Trust's arguments lack merit. In its Order dated March 5, 2025, docket no. 92, the Court directed that judgment "shall be entered in favor of the Government and against the Stoll Family Trust and Glen A. Stoll, as follows: (i) the Stoll Family Trust is a sham and holds the Subject Property in constructive trust for Stoll; [and] (ii) the Government's tax liens on the Subject Property are valid and enforceable." Order at 17, ¶ 3 (docket no. 92).

As explained in the prior Order, although Stoll Family Trust might have begun as a legitimate estate-planning vehicle for Stoll's parents, it currently serves no purpose other than to try to shield Stoll from the Government's efforts to collect long-delinquent taxes. *See id.* at 15–16. Thus, regardless of its status at the time of its creation, Stoll Family Trust is now a sham entity and holds the Subject Property in constructive trust for Stoll. By virtue of Stoll's admissions, the Government has proven the correctness of its tax assessments, the validity and enforceability of its tax liens against the Subject Property, and its right to foreclose on those liens. Stoll Family Trust's objections are overruled, and judgment shall be entered in a form similar to the Government's proposal.

C.   **Appointment of Receiver**

The Government's proposed order identifies Steven S. Snider as the appointed receiver and contemplates that the appointed receiver will take custody of the Subject Property within thirty (30) days. Stoll Family Trust has objected to the Government's proposed order on two grounds: (i) it asserts that insufficient information has been provided concerning Steven S. Snider's qualifications to serve as receiver; and (ii) it

ORDER - 5

1  contends that the appointed receiver should not commence the process of selling the

2  Subject Property until after the 60-day period for filing a notice of appeal has expired.

3       Stoll Family Trust's first argument lacks merit.  The Government has described

4  Snider as a real estate broker[3] with sixteen (16) years of experience selling residential

5  properties.  See Pl.'s Mot. at 3, ¶ 5 (docket no. 94).  Snider has served as the court-

6  appointed receiver in other matters in this District, while operating as Steve S. Snider

7  LLC.  See Carr v. Noren, No. C22-115 RSL, 2022 WL 5264588 (W.D. Wash. Sept. 6,

8  2022); see also United States v. Wight, Order (docket no. 63), No. C16-1556 JCC (W.D.

9  Wash. Feb. 17, 2023).  Snider has since become a founding member of, and a broker at,

10 Real Residential LLC, an agency comprised of 28 real-estate-industry professionals.  See

11 https://www.realresidential.com/real-residential/.  According to Real Residential LLC's

12 website, Snider has a bachelor's degree from Washington State University, where he

13 minored in real estate while also obtaining his real estate license, and he "has consistently

14 been in the top 1% of all brokers in Washington State."  https://www.realresidential.com/

15 agents/steve-snider/.  The Court concludes that Snider has no personal interest in the

16 Marysville House or this action and is competent and more than qualified to serve as the

17 appointed receiver of the Subject Property.

18      In reply to Stoll Family Trust's other objection, namely that the date on which the

19 receiver may assume possession of the Marysville House should be after the deadline for

---

[3] In Washington, a "broker" is a person who performs certain services for which a real estate license is required, and an "agent" is a broker who has entered into an agency relationship with a buyer or seller in an actual or prospective real estate transaction.  See RCW 18.85.011 & 18.86.010.

filing appeal, the Government suggests that the proposed judgment would not be "final" within the meaning of 28 U.S.C. § 1291, and thus, no appeal could be taken. The Court disagrees. In this matter, the Court has adjudicated all claims involving all parties, the litigation has resolved on the merits, and nothing remains to be done except to execute on the judgment. <u>See</u> <u>United States v. Allahyari</u>, 99 F.4th 486, 491 (9th Cir. 2024). The Court's intent is that the judgment entered pursuant to this Order and the Order entered March 5, 2025, docket no. 92, shall constitute a "final decision" for purposes of 28 U.S.C. § 1291 and Federal Rules of Appellate Procedure 3 and 4. <u>See</u> <u>id.</u> at 493 (quoting <u>Grant v. Phoenix Mut. Life Ins. Co.</u>, 106 U.S. 429, 431 (1882) ("a decree of sale . . . , which settles all the rights of the parties and leaves noting to be done but to make the sale and pay out the proceeds, is a final decree for the purposes of an appeal")).

The Government also advises that the mere filing of a notice of appeal does not stay execution on a judgment. With this observation, the Court concurs. Absent an order to the contrary, execution on a judgment is automatically stayed for thirty (30) days after its entry. <u>See</u> Fed. R. Civ. P. 62(a). Thereafter, to stay execution on a judgment pending appeal, a party must, unless excused by the Court, post a supersedeas bond or provide other security, for example, by depositing funds into the Registry of the Court. <u>See</u> Fed. R. Civ. P. 62(b). Although the amount of Stoll's tax liability to the Government is $1,265,461.89, together with interest, penalties, and additional statutory accruals that have accumulated since December 13, 2024, the Court will accept, for purposes of staying enforcement of the judgment, an approved supersedeas bond or Registry deposit in the amount of $500,100, which is Snohomish County's assessed value for the Subject

ORDER - 7

Property for the tax year 2025. <u>See</u> Pl.'s Mot. at 5 n.1 (docket no. 94). The deadline for posting such supersedeas bond or making such Registry deposit will be thirty-one (31) days after entry of judgment.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Stoll's motion for reconsideration, docket no. 96, is DENIED.

(2) The Government's motion for entry of judgment, docket no. 93, is GRANTED, and the Clerk is DIRECTED to enter judgment consistent with this Order and the Order entered March 5, 2025, docket no. 92.

(3) The Government's motion for an order of foreclosure, judicial sale, and appointment of receiver, docket no. 94, is GRANTED, as follows:

    (a) The Subject Property shall be sold pursuant to the judgment of this Court and in accordance with 26 U.S.C. § 7403, 28 U.S.C. § 2001, and the terms and conditions set forth below;

    (b) Steven S. Snider is hereby appointed as receiver of the Subject Property ("Receiver"), and he shall have the authority and duties set forth by applicable federal statutes, as well as this Order; <u>see</u> 26 U.S.C. §§ 7402(a) & 7403(d);

    (c) In the absence of a supersedeas bond posted or a Registry deposit made in the amount of $500,100 within thirty-one (31) days after the date judgment is entered, Receiver shall begin taking the steps necessary to sell the Marysville House, including taking possession of the Subject Property and all

improvements, buildings, fixtures, materials, contents, and appurtenances thereon, as well as preserving and protecting the value of the Subject Property; any sale of the Subject Property shall be subject to confirmation by the Court;

(d) The initial listing price shall be set by Receiver in consultation with the Government; if a lack of buyer interest or buyer feedback indicates that the initial listing price is too high, Receiver may, after consultation with the Government, lower the listing price;

(e) The Government shall have authority to decide what counteroffers, if any, to make in response to a purchase offer, and to decide whether to accept an offer or counteroffer to purchase the Subject Property, provided that the sale is conditioned on the Court's approval;

(f) Any purchase-and-sale agreement shall include the following terms: (i) an earnest money deposit in an amount that is at least two percent (2%) of the purchase price, or in any higher amount approved or required by the Government, which shall be forfeitable[4] upon the purchaser's failure to perform; (ii) the balance of the purchase price shall be paid in cash or certified check at closing; and (iii) the Subject Property will be sold free and clear of all liens and interests of parties other than purchasers;

---

[4] Any forfeited earnest money shall be distributed first to Receiver to the extent of any expenses already incurred (see infra ¶ 3(m)(2)), and then in the sequence set forth in Paragraphs 3(m)(3)–(5), below.

(g) Receiver shall have all rights, powers, and authority necessary to fulfill his obligations, including, but not limited to, entering and inspecting the Subject Property, advertising the sale of the Subject Property and showing it to prospective buyers and/or their agents, and taking actions reasonably required to protect and preserve the value of the Subject Property and/or to put it into saleable condition, provided that expenditures of more than $5,000 in the aggregate must be pre-approved by the Government, and further provided that Receiver shall have no obligation to advance his own or his agency's funds to pay any expenses related to the Subject Property;

(h) The Government shall be responsible for filing a motion to confirm the sale, and closing shall not occur until after the sale has been confirmed by the Court; at closing, the purchaser(s) shall receive a quitclaim deed to the Subject Property, executed by Receiver, and the interests of the parties to this action shall attach to the proceeds of the sale of the Subject Property in the same order of priority that they have with respect to the Subject Property (*see infra* ¶ 3(m)); upon confirmation of the sale, all interests in, liens against, and/or claims to the Subject Property that are held or asserted by the parties to this action and/or their successors or assigns shall be discharged and extinguished;

(i) In the absence of a timely posted supersedeas bond or deposit into the Registry of the Court, all persons occupying the Subject Property shall leave and vacate the Subject Property within thirty-one (31) days after entry of

judgment; such persons may remove their personal property from the premises,[5] but they must leave all improvements, buildings, fixtures, and appurtenances in or on the Subject Property, and they shall not commit any waste, vandalism, or other damage to the Subject Property or its improvements, buildings, fixtures, and appurtenances;

(j)  If any person refuses to timely vacate the Subject Property, Receiver is authorized to coordinate with the United States Marshal's Office to take appropriate action to remove such person from the premises; the United States Marshal's Office is authorized to enter and remain on the Subject Property, including the land and any structure or vehicles thereon, to arrest and/or evict any person who obstructs, interferes, or attempts to obstruct or interfere with the execution of this Order or the judgment in this action ("Unauthorized Person"), and to use reasonable force if necessary; when all Unauthorized Persons have vacated or been evicted from the Subject Property, the United States Marshal's Office shall relinquish possession and control to Receiver; any Unauthorized Person who re-enters the Subject Property prior to closing may be ejected by the United States Marshal's Office without further order of the Court;

---

[5] Any personal property that is not timely removed from the Subject Property shall be deemed abandoned and forfeited, and Receiver is authorized, after consultation with the Government, to dispose of the remaining personal property in any appropriate manner, including selling it, with the proceeds applied first to the expenses of sale and then to the discharge of the liabilities at issue in this action (*see infra* ¶ 3(m)).

ORDER - 11

    (k)  If, after closing, the Subject Property remains occupied by an Unauthorized Person, a writ of assistance may, without further notice, be issued to the purchaser(s) by the Clerk of the Court;

    (l)  As long as the Subject Property is occupied or used by Glen Stoll, Stoll Family Trust, the Director of the Family Defense League (a.k.a. Family Defense League, a.k.a. Family Defense Network, a.k.a. Family Defense Fund), and/or any person known to or associated with these defendants, such occupants or users (1) shall take all reasonable steps necessary to preserve the Subject Property, including all improvements, buildings, fixtures, materials, contents, and appurtenances thereon, (2) shall maintain a fire and casualty insurance policy on the Subject Property,[6] (3) shall not cause or permit any waste against or damage to the Subject Property and shall not do anything to reduce the value or marketability of the Subject Property or allow others to do so, (4) shall not themselves (and shall not allow others to) record any instruments against the Subject Property or publish any notice or take other action (for example, posting on social media, advertising in the newspaper, or erecting yard signs) that might directly or indirectly adversely affect the value of the Subject Property or deter or discourage potential buyers from offering to purchase the Subject Property;

---

[6] If the Subject Property is vacated prior to closing, then Receiver, after consultation with the Government, shall obtain and maintain until closing the appropriate insurance for the Subject Property.

ORDER - 12

(m) The proceeds from the sale of the Subject Property shall be distributed in the following sequence by the escrow agent that handles the closing, based on instructions given to the escrow agent by Receiver after consultation with the Government (and after the Court has confirmed the sale):

(1) <u>Receiver's Commission</u>: either (A) six percent (6%) of the gross sale proceeds, if Receiver must share the commission with a buyer's agent, or (B) five percent (5%) of the gross sale proceeds, if Receiver finds a purchaser without involving a buyer's agent;

(2) <u>Receiver's Expenses</u>: for reasonable and necessary expenditures incurred in connection with the Subject Property (*see supra* ¶ 3(g) and nn.5&6);

(3) <u>Snohomish County</u>: for any ad valorem property taxes due and owing at the time of sale, and associated liens in favor of Snohomish County, which have priority over the Government's tax liens, as reflected in the stipulation between Snohomish County and the Government, docket no. 9, which was adopted by the Court in an Order entered October 18, 2022, docket no. 11; *see* 26 U.S.C. § 6323(b)(6);

(4) <u>Government</u>: for the outstanding balance of the tax liens reduced to judgment against Glen A. Stoll for unpaid federal income tax liabilities for the tax years 2001 through 2008;

(5) <u>Registry</u>: Any amount remaining after the above disbursements are completed shall be deposited into the Registry of the

ORDER - 13

Court and shall remain in the Registry pending any motion by a party to this action and the Court's resolution of such motion;

(n) All parties to this action, and any persons acting in concert with them or on their behalf, are hereby RESTRAINED and ENJOINED from doing anything that would reduce the value or marketability of the Subject Property or interfere with the sale of the Subject Property or with Receiver's efforts to protect, preserve, and sell the Subject Property or otherwise carry out his duties under this Order. A violation of this Order may be deemed a contempt of court and could subject the violator to sanctions.

(4) The Clerk is further DIRECTED to send a copy of this Order and the final judgment to all counsel of record and to defendant pro se Glen A. Stoll via both email and U.S. mail, and to CLOSE this case.

IT IS SO ORDERED.

Dated this 2nd day of May, 2025.

　　　　　　　　　　　　　　　　　　　／s／ Thomas S. Zilly
　　　　　　　　　　　　　　　　　　　Thomas S. Zilly
　　　　　　　　　　　　　　　　　　　United States District Judge

ORDER - 14